**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES E. KING,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-04-BE-2677-S** |
| | ] | |
| **WURZBURG, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This case is currently pending before the court on defendant Wurzburg Inc.'s motion for summary judgment (doc. # 31). In support of its motion, the defendant has submitted a brief (doc. #32) and a reply brief (doc. # 40). Wurzburg sells and distributes labels, boxes, and similar packaging products.[1] Wurzburg is headquartered in Memphis, Tennessee and has branch locations in ten other cities, including Birmingham, Alabama. Plaintiff James King filed an objection to the motion (doc. # 39) with corresponding evidentiary submissions.[2]

King has worked as a truck driver and warehouse employee in the defendant's Birmingham warehouse since 1988. In his complaint, as amended, King alleges that he has been systematically denied access to promotional opportunities on the basis of his race, African-

---

[1]*See* doc. # 32, p. 2.

[2]In responding to the defendant's motion for summary judgment, the plaintiff withdrew his claims of discrimination and retaliation for the events regarding the elimination of the Macon, Georgia run; the meal reimbursements; and the layoffs of Cederic Lumpkin and Raymond Collins.

1

American, subjected to retaliation and a racially hostile work environment, all in violation of 42 U.S.C. 1981 and the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, ("Title VII").  The court has jurisdiction of this case under 28 U.S.C. § 1331 pursuant to its federal question jurisdiction.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present.  Fed. R. Civ. P. 56.  Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 251-52.  In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him."  *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986).

Having reviewed the parties' submissions under the motion for summary judgment standard, the court concludes that the defendant's motion for summary judgment is due to be DENIED in part and GRANTED in part.  Specifically, the court finds that the motion for summary judgment is due to be DENIED on the failure to promote and racially hostile work environment claims.  However, the motion for summary judgment is due to be GRANTED on the retaliation claim.

## II. DISCUSSION[3]

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Similarly, section 1981 guarantees to all persons in the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Section 1981, like Title VII, prohibits discrimination on the basis of color, as well as race.  *See Walker v. Secretary of Treasury, I.R.S.,* 713 F. Supp. 403, 408 (N.D. Ga. 1989), *aff'd.* 953 F.2d 650 (11th Cir.1992) (table).  The Eleventh Circuit recognizes that claims alleging disparate treatment in employment under Title VII and § 1981 have the same substantive proof requirements and thus, should be analyzed under the same framework.  *See e.g., Bass v. Board of County Com'rs, Orange County, Florida,* 256 F.3d 1095, 1109 n. 4 (11th Cir.2001); *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998).

In support of its motion for summary judgment, Wurzburg makes several arguments. First, it argues that the plaintiff cannot establish a *prima facie* case of discriminatory failure to promote because King never applied for a sales representative position and because the undisputed facts of the record establish that he did not have the educational background or sales experience for the sales representative position.  Next, the defendant argues that the plaintiff's retaliation claim is due to be dismissed because his allegations that he was subjected to threats of termination and other generalized forms of verbal harassment do not rise to the threshold level of

---

[3]Based on the lengthy and through presentation of the facts in the parties' briefs, the court does not include a detailed recitation of the facts in this Memorandum Opinion.

substantiality to constitute an adverse employment action.  Lastly, Wurzburg argues that King's allegations of a racially hostile work environment are not so severe or pervasive so as to alter the terms and conditions of his employment and create a hostile or abusive working environment.

In his submissions, plaintiff argues, among other things, that, although he expressed an interest in learning about promotional opportunities to several of the defendant's supervisory employees, he never received information about job vacancies.  Wurzberg concedes that it only began publicly posting job vacancies in November 2004, approximately two months after King filed this lawsuit.

### A. Failure to Promote Claim

The court concludes that King has presented sufficient evidence to establish a *prima facie* case of discriminatory failure to promote and specifically finds a genuine issue of material fact regarding whether the defendant's purportedly race-neutral explanation for its failure to consider King for a sales representative position is a pretext for racial discrimination.

To establish a *prima facie* case of discriminatory failure to promote, a plaintiff is required to prove that he or she is a member of a protected class, was qualified for and applied for the promotion, was rejected despite these qualifications, and that someone outside the protected class filled the position.  *Summerlin v. M & H Valve Co.*, No. 05-11030, 2006 WL 93131 at *2 (11th Cir. 2006) (per curiam).  At issue in this case is whether King can establish that he was qualified and applied for a job as a sales representative.

As it relates to his admitted failure to apply for the sales representative position, the plaintiff asks the court to overlook this deficiency given Wurzburg's concession that it only

began publicly posting job vacancies in November 2004, approximately two months after King

filed this lawsuit.  Prior to November 2004, Wurzburg had rather unstructured arrangements for

hiring and promotions.[4]

Of specific relevance to this case is the Eleventh Circuit's willingness to abandon the

formulaic *prima facie* test when a failure to promote claim arises out of an informal, secretive

selection process.  In such a case, a plaintiff may raise an inference of intentional, racially-

disparate treatment without proving that he technically applied for, and failed to obtain, the

promotion.  *See e.g., Roberts v. Gadsden Mem'l Hosp*., 835 F.2d 793, 797-798 (11th Cir. 1988),

*modified on other grounds*, 850 F.2d 1549 (11th Cir. 1988) (holding that plaintiff can establish a

*prima facie* case of failure to promote although he or she does not technically apply for the job).

Instead, a plaintiff may establish the "application element" of the *prima facie* case by showing

that the position was available and that the employer had some reason or duty to consider him or

her for the position.  *See Miller v. Bed, Bath, & Beyond*, 185 F. Supp. 2d 1253, 1267 (N.D. Ala.

2002) (citing *Jones v. Firestone Tire and Rubber Co., Inc*., 977 F.2d 527, 533 (11th Cir. 1992));

*Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984).

The defendant does not dispute that it had such an informal promotion system and that

the more relaxed requirements of this element, therefore, would apply.  Instead, Wurzburg argues

that, despite its failure to post job vacancies, it had no duty to consider King for a sales

representative position because King cannot show that Wurzburg promoted white, truck drivers

to sales representative jobs.  Based on this generalization, it argues that the defendant had no

---

[4]*See* doc. # 54, p. 15.

5

discernable reason to consider King for a sales position.

According to the defendant, an employer who utilizes informal methods of job posting does not have an obligation to consider every minority employee for every available position within its entire company.  Instead, Wurzburg argues that the Eleventh Circuit only requires employers using informal methods of filling job vacancies to consider all employees who might reasonably be interested in the position.  *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984).  The defendant contends that cases decided after *Carmichael* narrowly define the pool of employees who might reasonably be interested in the position as those who worked in the same department, the same geographical location, and within the same general job classification as the plaintiff.  *See e.g., Walker v. Prudential Prop. & Cas. Co.*, 286 F.3d 1270 (11th Cir. 2002) (holding that employer had no duty to consider female plaintiffs for a job opportunity in another city because the hiring authority had no actual knowledge or reason to believe that they would be interested in jobs in another city).  Consequently, the defendant distinguishes *Carmichael* by arguing that the decision-makers for the promotional opportunity at issue in this case were not located in the Birmingham facility where King worked but hundreds of miles away in Memphis, Tennessee.  Given this geographical distance and the undisputed fact that the ultimate decision makers for the sales representative position had no actual knowledge of King's interest in promotional opportunities, Wurzburg argues that it had no duty to inform plaintiff of any open sales representative positions.

King vehemently disputes the defendant's characterization of the record and its interpretation of *Carmichael,* and argues that his comments to operations manager Gary Westmoreland and vice-president of information technology Syd Lerner were sufficient to put

Wurzburg on notice that he was reasonably interested in *any* type of promotional opportunity, even those in the sales department.  Sometime in July 2004 in response to his unexpected loss of overtime income caused by the elimination of a weekly delivery run to Macon, Georgia,[5] King approached Westmoreland about another position or promotion that the company could give him in compensation for the loss of the Macon, Georgia delivery route.  Westmoreland is the operations warehouse manager and works from the defendant's corporate office in Memphis, Tennessee, where the employment decisions at issue were made.  King told Westmoreland that he wanted to be promoted, that he had business experience, and that he was willing to take any position.

Sometime in 2004 the plaintiff also spoke with vice-president Syd Lerner.  Lerner also works in the defendant's Memphis, Tennessee office and was visiting Wurzburg's Birmingham facility.  King and Lerner discussed the elimination of the Macon delivery run; complained that African-American warehouse employees did not receive promotions and that job openings were never posted; and told Lerner that he would like to be considered for some type of promotion.  King followed-up his request for a promotion with an email to Lerner.[6]  At his deposition, Lerner acknowledged the plaintiff's request for a promotion and testified that his responsibility was to pass King's complaints to other members of Wurzberg's management team.  However, Lerner did not specifically recall notifying anyone at Wurzburg of the plaintiff's complaints or request

---

[5]Sometime in the fall of 2003, the defendant began outsourcing its weekly Macon, Georgia delivery route to an outside contractor.  Prior to 2003, King made the delivery run to Macon and was paid overtime for making these interstate deliveries.  After Wurzburg eliminated the Macon run, King continued to make local deliveries, and still continues to work forty hours per week for the defendant.

[6]*Id.*

for a promotion.

No one disputes that neither Westmoreland nor Lerner are decision-makers for Wurzburg's sales department.  The parties also agree that King never advised anyone in the sales department of his interest in a sales representative position.  Lastly, no one disputes that the plaintiff did not make specific references to a sales representative position.

Based on the parties' arguments, this court must determine whether King's statements to Westmoreland and Lerner, expressing a general interest in *any* type of promotional opportunity, were sufficient to put Wurzburg on notice that he was reasonably interested in a position in the sales department.  This issue is complicated by Lerner's admitted failure to discharge his duty of communicating King's interest in promotional opportunities to the appropriate managerial officials and undisputed facts indicating that the actual decision-makers in the sales department were unaware of King's interest in promotional opportunities.

The court agrees with the parties that *Carmichael* is the appropriate starting point for its analysis.  The defendant in *Carmichael* was a small family-run business with about forty-five employees.  The company did not have a formalized method of notifying employees of job openings.  The plaintiff  challenged his failure to receive promotions within the same company and within the same geographical vicinity as his current job.  738 F.2d at 1129.  In *Carmichael,* the court concluded that where an employer relies on informal methods and does not post available positions, a plaintiff need not show that he applied for the position because the employer had "a duty to consider all those who might reasonably be interested." *Id.* at 1133.  The court also rejected the defendant's argument that the plaintiff was required to demonstrate an

8

explicit expression of interest in specific jobs to establish a *prima facie* case.  *Id*. at 1134.

Subsequent cases analyzing the creation of a *prima facie* case of failure to promote when employers utilize an informal method of posting job announcements have, to some extent, distinguished *Carmichael's* holding when the promotional opportunity at issue is in a different location and when no evidence exists that any management official with a role in the hiring process had any knowledge of the plaintiff's desire for promotional opportunities.  *See e.g., Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1275- 1276 (11th Cir. 2002) (distinguishing *Carmichael* and holding that employer had no duty to consider female plaintiffs for a job opportunity in another city because, unlike their male comparator, they had not expressed an interest in job opportunities in other cities, and thus, the hiring authority had no actual knowledge or reason to believe that they would be interested in jobs in another city); *Freeman v. Walgreen Co.*, No. 2:05CV356-WHA, 2006 WL 229869, at *4 (M.D. Ala. Jan. 31, 2006) (distinguishing *Carmichael* and holding that defendant had no duty to consider plaintiff for a promotional opportunity at another store in another section of the city when no evidence that any management official with any role in the hiring process had knowledge of the plaintiff's interest in promotional opportunities).

However, the court concludes that the unique facts of this case create a factual issue regarding whether Wurzburg had a duty to consider King for promotional opportunities, given his expressions of interest to Lerner.  Unlike the plaintiffs in the *Walker* and *Freeman* cases, King specifically communicated his interest in *any* promotional opportunities to Syd Lerner, vice-president of information technology and quality control, who testified that his job was to pass King's interest in promotional opportunities and King's complaints about the company's

9

failure to post job openings to the appropriate managerial officials.[7]

Even assuming the truth of the defendant's argument that *Carmicheal's* holding is limited to those situations where the promotional opportunity at issue occurs in the same location and in the same department where the plaintiff works, a reasonable jury could conclude that King's specific requests for promotional opportunities to two higher-level managerial officials in the company's Memphis headquarters, the place where hiring decisions about sales representatives are made, created a duty by the employer to consider King for a sales representative position. *Cf., Carmichael*, 738 F.2d at 1133 (explaining that plaintiff in a failure to promote case need not demonstrate an explicit interest in a specific job).

Furthermore, a reasonable jury could also conclude that persons outside the sales department played a role in the selection of sales representatives. For example, Steve Shapiro, the vice-president of sales, testified that persons interested in sales representative positions typically learned of vacancies through other people working in the company[8] and that other members of the Wurzburg management team might receive resumes from interested candidates.[9] Given this informal method of recruiting sales representatives, a jury could reasonably determine that Lerner and Westmoreland played a role in the hiring process for sales representatives and that their awareness of King's interest in promotional opportunities gave the defendant a duty to consider him for a sales representative position. *Cf. Freeman*, 2006 WL 229869, at *5 (finding that the employer did not have a duty to consider the plaintiff for a vacant position, absent the

---

[7]Dep. Syd Lerner, p. 71.

[8]Dep. Steve Shapiro, p. 47.

[9]*Id.*, p. 47, 59.

existence of a management official who played a role in filling the position and who also had knowledge of the plaintiff's interest in promotional opportunities).  Consequently, the court concludes that the plaintiff has satisfied the "application element" of a *prima facie* failure to promote case.

Similarly, the court finds that King has created a genuine issue of material fact on the issue of whether he was qualified for the sales representative position.  Wurzburg contends that King's lack of post-high school education and relevant sales experience indisputably demonstrate that he cannot even satisfy the minimum qualifications for its sales representatives.  Vice-president of sales Steve Shapiro testified that the defendant's basic qualifications for sales representatives are two years of college and a minimum of two years sales experience; a four-year degree with sales experience; or a degree in a field related to packaging.[10]  However, since the 1990's, Wurzburg has placed increased emphasis on the attainment of a four-year degree.[11]

King concedes that he did not attend college and that his sales experience is limited to selling approximately $3,255 worth of advertising between 2000 and 2003 in conjunction with a public affairs talk show that he hosted in his spare time.  The plaintiff also argues that his eighteen years of experience as a Wurzburg employee should also count as relevant sales experience or a substitute for a degree in packaging.

In an attempt to prove that he is qualified for a sales representative position, the plaintiff directs the court's attention to several comparators whose credentials do not comport with

---

[10]*Id.*, p. 69-70.

[11]*Id.*, p. 73-74.

Wurzburg's purported qualifications for its sales representatives.  For example, Jon Halprin, who

was hired within the last three years, does not have a college degree, although he had six years of

sales experience at Wurzburg when he was hired as a sales representative.  In 2002 and 2003,

Wurzburg hired at least four other white males who have four-year college degrees but little or

no sales experience.[12]  Consequently, King asks the court to disregard Wurzburg's purported

minimum requirements for its sales representatives because its actual hiring practices do not

comport with its stated requirements.

      To establish a *prima facie* case of discriminatory failure to promote, a plaintiff is not

required to make a showing of relative qualifications or a showing that he or she was equally or

more qualified than persons who ultimately received the job.  *See Denney v. City of Albany*, 247

F.3d 1172, 1183 (11th Cir. 2001).  Instead, a Title VII plaintiff alleging a discriminatory failure

to promote need only show that he or she satisfied an employer's objective qualifications.

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005).  The Eleventh Circuit

defines objective qualifications as those that are objectively verifiable and either easily

obtainable or within the plaintiff's possession.  *See Walker v. Mortham*, 158 F.3d 1177, 1192-93

---

[12]Specifically, plaintiff points to Andy Williamson, James Ogilvie, Thomas Wolf, and Ryan
Miles.  *See* Pl's *Exs.* 2, 3, 6, & 7.  The defendant contends that the plaintiff should be precluded from
using James B. Ogilvie as a comparator in his Title VII promotion claim because the two-year statute of
limitations for section 1981 actions precludes King from using Ogilvie as a comparator.  The defendant
contends that the plaintiff was put on notice of any alleged discrimination in Wurzburg's hiring of
Ogilvie on August 5, 2002, the date Ogilvie was hired.  King filed this lawsuit in September 2004, more
than two years after Ogilvie's hiring.

      Given the requisite standard of review that requires that the court interpret the facts in the light
most favorable to the party opposing the motion for summary judgment, the court finds that King has
created an issue of fact regarding when he received knowledge of Ogilvie's hiring.  Within the context of
Wurzburg's admitted failure to post job vacancies, a jury could reasonably conclude that King did not
learn about Ogilvie's hiring until September or October of 2003, a time period within the two year statute
of limitations.  Consequently, the court concludes that Ogilvie is a valid comparator.

(11th Cir. 1998).  In this case, King essentially argues that Wurzburg's purported "basic qualifications" for its sales representative positions are, in essence, subjective criteria as evidenced by his comparators who were hired in contravention of Wurzburg's purported objective hiring criteria.

Given the Supreme Court and the Eleventh Circuit's statements characterizing the plaintiff's *prima facie* burden as light, the court finds that evidence that Wurzburg has hired sales representatives in the last four years that either had no college education or no sales experience, coupled with undisputed testimony that plaintiff has some limited sales experience, as well as eighteen years of work exprerience with the company, is sufficient to establish that he was qualified for a sales representative position and thus, establish a prima facie failure to promote claim.  *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186 (1989); *Vessels*, 408 F.3d at 769.    Once a plaintiff has established a *prima facie* case, thereby raising an inference that he or she was the subject of intentional race discrimination, the burden shifts to defendant to rebut this inference by presenting legitimate, non-discriminatory reasons for its failure to select the plaintiff for the position sought. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  If the employer successfully articulates a legitimate non- discriminatory reason for the action, the plaintiff must next establish that the employer's reason is a pretext for racial discrimination.  *Burdine,* 450 U.S. at 256.

Wurzburg argues that King cannot establish that its non-discriminatory, race-neutral reason for its failure to consider him for a sales representative position is pretextual because he lacks the requisite educational background or sales experience.  A plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or

13

contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 1273, 1281 (M.D. Ala. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).  More importantly, given the facts of this case, a plaintiff may utilize comparator evidence to establish pretext.  *See Walker v. Mortham*, 158 F.3d 1177, 1184 n. 10 (11th Cir. 1998); *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985).

In this case, the inconsistency between Wurzburg's stated requirements for sales representatives and the existence of several comparators whose credentials do not comport with all of Wurzburg's articulated qualifications for its sales representatives casts doubt on the defendant's purportedly race-neutral explanation.  Consequently, the court concludes that King has presented sufficient evidence of pretext to survive a motion for summary judgment. Accordingly, the defendant's motion for summary judgment is due to be DENIED on the plaintiff's Title VII failure to promote claim.

### B. Retaliation Claim

The court concludes that unfulfilled threats of termination and verbal harassment do not rise to the threshold level of substantiality to constitute the requisite adverse employment action needed to establish a *prima facie* case of retaliation.  King alleges that, after he filed a charge of discrimination with the EEOC in January 2004, his immediate supervisors, Carl Johnson and Darryl Perry, began a campaign of verbal harassment that included complaints about the caliber of his work, threats of termination, and threats of physical violence designed to stop King from causing problems.  Plaintiff alleges that the above-referenced conduct was performed at the

14

behest of operations manager Gary Westmoreland.

To establish a *prima facie* case of retaliation, plaintiff must establish that (1) he engaged in a statutorily protected expression; (2) he was subjected to an adverse employment action; and (3) a causal link between the adverse employment action and the protected activity.  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

The court specifically finds the plaintiff did not suffer an adverse employment action. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta*, 212 F.3d at 587.  The Eleventh Circuit has not adopted a bright-line test for determining when the challenged conduct constitutes an adverse employment action but clearly holds that "some threshold level of substantiality . . . must be met for unlawful discrimination to be cognizable."  *Stavropoulos v. Firestone*, No. 02-16486, 2004 WL 345864, at *5-6 (11th Cir. February 25, 2004); *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001)*; Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

In *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001), the Eleventh Circuit further clarified the standard for determining if the challenged employment action satisfies a threshold level of substantiality.  The *Davis* court rejected the plaintiff's argument that memos in his personnel file memorializing workplace violations and substandard job performances were adverse employment actions because they resulted in diminished self-esteem

and potentially interfered with unspecified and unexplored future job prospects.  245 F.3d at

1239.  Specifically, the court held that

> [a]n employee must show a serious and material change in the terms, conditions,
> or privileges of employment.  Moreover, the employee's subjective view of the
> significance and adversity of the employer's action is not controlling; the
> employment action must be materially adverse as viewed by a reasonable person
> in the circumstances.
>
> *Davis*, 245 F.3d at 1239.

King's retaliation claim fails because he cannot establish the existence of an adverse

employment action.  Verbal reprimands, threats of physical abuse, and threats of termination do

not constitute adverse employment actions.  *See Gupta,* 212 F.3d at 588 n. 15 (holding that

supervisor's unfulfilled threat to write letter regarding plaintiff's allegedly negative employment

performance cannot constitute an adverse employment action); *Smiley v. Jekyll Island State Park*

*Authority,* 12 F. Supp. 2d 1377, 1382 (S.D. Ga.1998) (finding that plaintiff's allegations that his

supervisor slapped him, verbally abused him and criticized his job performance do not establish

adverse employment action); *Benningfield v. City of Houston,* 157 F.3d 369, 377 (5th Cir.1998)

(holding that verbal reprimands do not constitute adverse employment actions).

The plaintiff has not alleged that Johnson and Perry's behavior or the threat of

termination resulted in any loss of pay, benefits, or any serious and material change in the nature

of his employment.  Furthermore, the evidence contained in the record demonstrates that these

threats of termination and other threats were unfulfilled, as the plaintiff still works for Wurzburg

and is still supervised by Johnson and Perry.  Given these undisputed facts, the court finds that

the defendant's motion for summary judgment is due to be GRANTED on the plaintiff's

retaliation claim.

16

**C. Racial Harassment Claim**

King asserts two types of racial harassment claims based on what he characterizes as racially hostile statements by co-workers and supervisors and alleged harassment that he experienced from various Wurzburg customers.  The court concludes that King's allegations of a racially hostile work environment caused by his interactions with Wurzburg customers create a genuine issue of material fact precluding summary judgment.

The Eleventh Circuit has adopted a five-pronged test for analyzing racial harassment claims.  Specifically, the plaintiff must demonstrate: (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was so severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive working environment; and (5) a basis exists for employer liability.  *See Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 583 (11th Cir. 2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

At issue in this case is whether the plaintiff's allegations of racial harassment are sufficiently severe or pervasive.[13]  King's racially hostile work environment claim consists of what he characterizes as racially hostile statements by co-workers and supervisors;[14] two

---

[13]In its motion for summary judgment, the defendant does not challenge the other elements of the *prima facie* case.  Consequently, the court does not address the issue of whether a basis exists for employer liability.

[14]Specifically, the plaintiff directs the court's attention to a fourteen-year-old incident where Gary Westmoreland called the plaintiff's immediate supervisors "black asses;" remarks made by Gary Westmoreland made sometime prior to 1999, opining that the Civil Was was nothing but a "bunch of damn Yankees trying to take over the South"; that Dr. Martin Luther King should have been killed; that white people do not attend games at Legion Field because six white people were killed at every game.
King further alleges that Westmoreland made disparaging comments about the leadership of the City of Birmingham, including comments that Richard Arrington should not be Mayor of Birmingham

instances where he observed the confederate flag while at work;[15] and harassment that he experienced from various Wurzburg customers.[16]  The defendant characterizes these incidents as too vague and conclusory to create a genuine issue of material fact.

To establish that harassing conduct was severe or pervasive, an employee must satisfy both a subjective and objective test.  *See Mendoza v. Borden,* 195 F.3d 1238, 1246 (11th Cir. 1999).  Consequently, the employee must establish not only that he subjectively perceived the environment as hostile, but that a reasonable person, considering all the circumstances, would perceive the environment to be hostile and abusive.  *See Watkins v. Bowden,* 105 F.3d 1344, 1355-56 (11th Cir.1997).

The comments that King attributes to Westmoreland and Wood are essentially statements espousing their various political views about local and national politics.   The court certainly does not doubt the sincerity of the plaintiff's subjective belief that Westmoreland and Woods' political viewpoints were subjectively offensive, frustrating, or annoying.  However, not all

---

and that the black leadership at City Hall is constantly causing problems.  Lastly, the plaintiff alleges that co-worker Judy Woods accused Jesse Jackson of being a racist and admitted that she has fears of African-American people taking over certain aspects of her life.

[15]King alleges that, sometime in 1999, Wood gave Westmoreland a throw blanket depicting the Appomattox surrender scene that contains what he believes to be an image of the confederate flag and that the confederate flag is displayed on a piece of artwork containing a wood carving of an Alabama boat replica, along with the current United States flag and the first flag of the United States.

[16]According to the plaintiff, he has been subjected to harassment from Wurzburg customers at least 50 or 60 times during the past eighteen years and is generally subjected to racially derrogatory comments from customers on a weekly basis.  King points to three specific incidents of customer harassment: (1) an Edgar's Bakery employee called King a "black ass" approximately three years ago; (2) An employee at a company called Browning and Browning called King a "mother fucking nigger" approximately five years ago; and (3) employees at U-Haul; A-1 Movers; and Parisians called King a "nigger."

conduct that a plaintiff finds annoying or burdensome is conduct that is sufficiently objectively offensive to rise to the level of actionable harassment. Specifically, innocuous statements or boorish conduct do not rise to the level of cognizable harassment. *Mendoza*, 195 F.3d at 1242.

The court also finds that Westmoreland's alleged comments to the plaintiff's immediate supervisors calling them "black asses," made outside the plaintiff's presence, was a one-time incident that would not compel a reasonable juror to conclude that racial epithets and racially charged statements were so commonplace, overt, and denigrating that they created an atmosphere charged with racial hostility so as to alter the conditions of employment and create an abusive working environment. *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (holding that "[r]acial slurs spoken by co-workers ha[ve] to be so 'commonplace, overt and denigrating that they create an atmosphere charged with racial hostility.'" )

Similarly, the court finds that the two isolated incidents in eighteen years of employment where King saw the confederate flag at the Wurzburg warehouse are insufficient to create a genuine issue of material fact on the issue of whether the harassment was severe or pervasive. King simply has not presented sufficient evidence that two instances where he saw the confederate flag over more than eighteen years of employment with Wurzburg were so severe or pervasive so as to alter the conditions of his employment and to create an abusive working environment.

In an apparent reference to King's claims of customer harassment, Wurzburg essentially attacks the plausibility of plaintiff's claims that he has been subjected to racially offensive remarks from customers on a weekly basis over the 19-year period that he has worked for Wurzburg. The defendant essentially asks the court to discount King's claims of customer

19

harassment because, in his deposition testimony, he could only recall and give specific testimony about five instances of alleged customer harassment.  Notably, the defendant does not argue that King's claims of weekly harassment from customers is not severe or pervasive but that they are unworthy of credence.  The court declines Wurzburg's invitation to make a credibility determination at this stage of the litigation.

Instead, the court finds that King's allegations of customer harassment, Wurzburg's knowledge of King's complaints of customer harassment, and Wurzburg's failure to take *any* corrective action to address the plaintiff's complaints create a genuine issue of material fact on whether the harassment was so severe or pervasive as to alter the terms and conditions of his environment and create a hostile or abusive working environment.

In assessing whether the plaintiff has created a jury question regarding whether racially hostile statements from Wurzburg customers was sufficiently severe or pervasive, the court must evaluate (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's job performance or ability to perform the job.  *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 647 (11th Cir. 1997).

The court is aware that the Eleventh Circuit often analyzes specific incidents of alleged harassment in comparison with the plaintiff's employment history to determine frequency.  *See Johnson v. Booker T. Washington Broad. Serv., Inc,* 234 F.3d 501, 509 (11th Cir. 2000) (holding that roughly fifteen separate instances of alleged harassment over the course of four months was sufficiently frequent); *Mendoza* 195 F.3d at 1246-48 (cataloging minimum level of severity

established by other circuits).  However, this Circuit also holds that repeated incidents of verbal harassment that continue despite the employee's objections are indicative of a hostile work environment, even without a "magic number" of racial or ethnic insults.  *See Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002) (citing authority from the Seventh Circuit).

Although King's allegations of 50 to 60 incidents of harassment in an eighteen year employment history roughly equals three to five incidents of customer harassment per year, the court nevertheless determines that King has created a genuine issue of material fact regarding the severe and pervasive prong of the analytical paradigm.  Specifically, the plaintiff testified that he *continues* to be subjected to racial harassment from customers on a *weekly basis* [17] and that he only began trying to ignore the harassment of Wurzburg's customers when his 50 or 60 complaints to warehouse manager Carl Johnson and Gary Westmoreland were repeatedly ignored.[18]

Instead of addressing his complaints, King testified that Johnson and Westmoreland told him to accept customer harassment as a condition of his employment.[19]  Johnson and Westmoreland's "advice" that he should accept harassing treatment from customers could convince a jury that the customer harassment altered the conditions of his employment, given his job as a truck driver where he is required to interact with customers.  A reasonable juror could also conclude that the plaintiff found this customer harassment particularly humiliating given his supervisor's failure to respond.

---

[17]Pl's Dep., p. 74.

[18]*Id.*, p. 75-76; 78-79.

[19]*Id.*, p. 89-90.

Unlike the other alleged incidents of racial harassment, the court finds that King's complaints of weekly and protracted harassment from Wurzburg customers, coupled with his supervisor's indifference to King's complaints, could convince a reasonable jury that King's position as a truck driver was so charged with racial hostility from customers so as to alter the conditions of his employment and create an abusive work environment.  Consequently, the court finds that the motion for summary judgment on the racially hostile work environment claim is due to be DENIED.

### III. CONCLUSION

Based on the foregoing, the court concludes that the motion for summary judgment is due to be GRANTED in part and DENIED in part.  The court specifically finds that the motion is due to be DENIED on the plaintiff's racially hostile work environment and discriminatory failure to promote claims.  However, the motion is due to be GRANTED on the plaintiff's retaliation claim.

The court will enter a separate order consistent with this Memorandum Opinion.

DONE and ORDERED this 24th day of May, 2006.


_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE